**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **D.H., E.H.-1, and H.H.**

**No. 23-281** (Kanawha County 22-JA-410, 22-JA-411, and 22-JA-412)

**MEMORANDUM DECISION**

Petitioner Father E.H.-2[1] appeals the Circuit Court of Kanawha County's April 17, 2023, order terminating his parental rights to the children, D.H., E.H.-1, and H.H.[2] He argues that the circuit court erred by terminating his parental rights rather than imposing a less restrictive dispositional alternative. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In September 2022, the DHS filed a child abuse and neglect petition alleging extreme domestic violence by petitioner against the mother in the presence of the children. Law enforcement responded to a vehicle accident where they found a vehicle had been crashed into an embankment and the driver had fled the scene. Shortly thereafter, law enforcement was advised of a domestic disturbance at the home of the registered owner of the vehicle. Upon their arrival at the home, they found petitioner with his hands around the mother's neck and beating her head against a wall. While being arrested, petitioner struck a police officer in the face. Law enforcement described petitioner as smelling of alcohol and having bloodshot and droopy eyes. The mother

---

[1]Petitioner appears by counsel Jason S. Lord. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Andrew Waight. Counsel Sandra K. Bullman appears as the children's guardian ad litem ("guardian").

[2]Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2]We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e). Additionally, because one of the children and petitioner share the same initials, we will refer to them as E.H.-1 and E.H.-2, respectively.

disclosed that petitioner threatened to kill her. She went on to reveal that petitioner "beat her up black and blue" approximately every six months, and she described several prior domestic violence events. Petitioner stated that the mother fabricated the allegations because he was a successful rapper and the mother wanted his money. The children were present in the home and recounted that "daddy choked mommy and mommy couldn't breathe." Based on the foregoing incident, petitioner was charged with domestic battery, domestic assault and strangulation, battery of an officer, failure to fingerprint, and driving under the influence. He remained incarcerated throughout the proceedings.

In January 2023, the court held an adjudicatory hearing at which time the court was advised that, in the parallel criminal case, petitioner pled guilty to a felony offense of attempted strangulation and a misdemeanor offense of battery on a police officer. The remainder of the criminal charges were dismissed according to an order accepting petitioner's plea agreement. The court took judicial notice of petitioner's guilty plea in the criminal case for purposes of the instant abuse and neglect proceeding. The court then heard testimony of a police officer who participated in petitioner's arrest. Petitioner elected not to testify. Based on the evidence presented, the court found that petitioner committed acts of domestic violence in the presence of the children, adjudicating petitioner as an abusing and neglecting parent and finding the children were abused and neglected.

The court proceeded to disposition in April 2023, at which time the DHS and guardian supported termination of petitioner's parental rights. The court heard testimony of a DHS worker who recommended termination of petitioner's parental rights (without visitation) due to the level and history of violence. The DHS worker testified that petitioner did not participate in services or visit the children throughout the pendency of the proceeding. Her testimony further revealed that petitioner violated the mother's domestic violence protective order by attempting to contact her from prison multiple times. While petitioner initially elected not to testify, he requested to speak following closing arguments and prior to the court's ruling. The court permitted him to do so, and petitioner stated, "I took responsibility for a lot of allegations they put on me so I've been trying to get through this, but I never hurt my girls and I never will." Based on the evidence, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future, as petitioner had not made sufficient efforts to rectify the circumstances that led to the filing of the petition. Therefore, the court found that there were no reasonable available less drastic alternatives and that the best interests of the children required termination. The court further denied any post-termination visitation. It is from the final dispositional order that petitioner appeals.[3]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Petitioner argues that the court erred by terminating his parental rights rather than imposing a less restrictive alternative, as the mother's parental rights remained intact. Petitioner's argument ignores our previous direction that West

---

[3]The mother of the children successfully completed an improvement period, and the children were reunified with her. The permanency plan is for the children to remain in the mother's care.

Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W. Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. The circuit court correctly found that petitioner's horrific domestic violence against the mother endangered the children in this case, as it occurred in their presence, and that the conditions could not substantially improve in the near future. Given petitioner's failure to acknowledge these conditions, it is clear the court's finding that they could not be improved was appropriate. *See In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) ("Failure to acknowledge the existence of the problem . . . results in making the problem untreatable" (citation omitted)). Ultimately, the court properly found termination of petitioner's parental rights to be in the children's best interests. *See* W. Va. Code § 49-4-604(c)(6) (permitting a circuit court to terminate parental rights upon finding no reasonable likelihood conditions of abuse and neglect can be substantially corrected in the near future and when necessary for child's welfare); *see also* Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect and abuse can be substantially corrected").

Petitioner further argues that the court erred by not allowing post-termination visitation and, in support of that argument, cites the following holding:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002). However, petitioner points to no evidence of a close emotional bond with the children or that visitation would not be detrimental to the children's wellbeing or would be in the children's best interest. In fact, our review of the record suggests the opposite, as petitioner did not attempt to visit the children during the pendency of the proceedings, and the children were exposed to extreme domestic violence when previously in his care. We, therefore, find no error by the circuit court in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 17, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: March 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn